98 F.3d 1342
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Thomas R. McCRORY, Plaintiff-Appellant,
v.
KRAFT FOOD INGREDIENTS, Defendant-Appellee.
 No. 94-6505.
 United States Court of Appeals, Sixth Circuit.
 Oct. 3, 1996.
 
 On Appeal from the United States District Court for the Western District of Tennessee, No. 93-02036; Jon P. McCalla, Judge.
 W.D.Tenn.
 REVERSED.
 Before: MERRITT and BATCHELDER, Circuit Judges; and DOWD, District Judge*.
 MERRITT, Circuit Judge.
 
 
 1
 Plaintiff, a chemist, appeals a grant of summary judgment for defendant in his employment discrimination lawsuit. Plaintiff brings claims of age discrimination under the Tennessee Human Rights Act, § 4-21-401(1), (2), discrimination on the basis of disability under the Americans with Disabilities Act, 42 U.S.C. §§ 12111 and intentional interference with retirements benefits in violation of the Employment Retirement Income Security Act, 29 U.S.C. § 1140. Because there is evidence in the record that raises a genuine issue of material fact as to whether defendant discriminated against plaintiff due to either age and/or disability, we reverse the opinion of the district court and remand as to the age and disability discrimination claims. We affirm that portion of the opinion granting summary judgment to defendant on the claim of discrimination under ERISA.
 
 I.
 
 2
 Plaintiff Thomas McCrory, a chemist, began work in 1960 as a laboratory technician for Humko Products, located in Memphis and a predecessor of defendant Kraft Food Ingredients. Plaintiff worked in the "wet" lab performing quantitative analysis on fats and oils in shortening. Plaintiff began working for Humko/Kraft right out of college and never worked for any other employer up until his discharge. Over the years, he had won numerous awards for his work. He had been at Kraft 32 years when he was discharged in 1992. He was 54 years old.
 
 
 3
 In 1973, Plaintiff became the supervisor of the wet lab and then became the "group leader" in the instrument lab. Group leaders coordinate the work flow in the lab and deal with problems that arise during analysis. In 1983, plaintiff returned to the wet lab as group leader in charge of five employees. Robin Rogers was plaintiff's immediate and primary supervisor at the time of plaintiff's discharge.
 
 
 4
 Plaintiff received his 1989 year-end performance from Jim Henze. Mr. Henze was a director of the lab and also one of Plaintiff's supervisors. The 1989 performance evaluation was on the low side of "fully meets performance requirements." Joint Appendix at 63.[1]
 
 
 5
 In March 1990, plaintiff began to experience some anxiety and to have trouble sleeping. In June 1990, plaintiff began to have uncontrollable crying spells that would last for 15-20 minutes. Plaintiff did not know the specific source of his anxiety, but it seemed tied to worries about the lab getting its work out due to some cutbacks in personnel and thoughts of his aging father. Plaintiff testified he would cry "for no reason at all." McCrory Dep. at 73-82, J.A. at 167-76. After several crying spells and increased anxiety, depression and even suicidal thoughts, plaintiff went to his family physician who prescribed Prozac. The Prozac did not work and plaintiff's crying spells and anxiety became worse.
 
 
 6
 On July 24, 1990, plaintiff experienced a severe crying spell at work and told his supervisor, Mr. Rogers, that he needed to go see his doctor. Mr. Rogers gave him permission to leave and also suggested he call the company's counseling group, Concern. Because plaintiff's regular doctor was out of town, plaintiff contacted Concern and saw a counselor that day. He was immediately referred to a psychiatrist who admitted him to the hospital. He remained in the hospital for four weeks. The cause of plaintiff's depression was not isolated, but he did start taking the drug Sinequan which helped plaintiff feel more in control and less anxious. After being discharged from the hospital and recuperating at home for two more weeks, Plaintiff started back to work half days for two weeks on September 4, 1990 and then returned to work full time. Plaintiff continued to see the psychiatrist and to take the medication. No other restrictions were placed on him. Plaintiff returned to work as group leader of the wet lab in charge of four persons. Plaintiff did not request, nor did he think he needed, any special treatment at work. Nothing was said about his illness upon his return to work except for general inquiries about his health. His supervisors, Mr. Rogers and Mr. Henze, as well as the others in the lab, knew he was taking antidepressant medicine every day.
 
 
 7
 Plaintiff received his 1990 year-end review in early 1991 and for the second year in a row received a rating on the low side of "fully meets performance requirements." J.A. at 64-67. No other specific incident occurred until June 1991 when plaintiff asked Mr. Rogers for permission to leave work to see his psychiatrist. According to plaintiff, Mr. Rogers asked plaintiff at that time if plaintiff had enough time with the company to take disability and retire. Plaintiff told Mr. Rogers he could not afford to do that. Nothing further was said. McCrory Dep. at 136-38, 412, J.A. at 216-19, 319. Mr. Rogers denies asking plaintiff about retirement at this time. Rogers Dep. at 98-106, J.A. at 389-95.
 
 
 8
 In December 1991, Mr. Henze and Mr. Rogers met with plaintiff to discuss his job performance. Mr. Henze and Mr. Rogers told plaintiff that he was not communicating well with his subordinates and with customers and that his management skills needed improvement. Plaintiff also testified that Mr. Henze and Mr. Rogers asked him about his medication and plaintiff replied that he did not believe that either his medication or his illness caused any job performance problems. Plaintiff testified that Mr. Henze told plaintiff that he was "uncomfortable" with Plaintiff talking to customers while he was on medication. Plaintiff responded that he likely would be on medication for the rest of life. Nothing further was said. McCrory Dep. at 112-13, 130, J.A. at 202-03, 211.
 
 
 9
 Two months later, in early 1992, plaintiff received an unacceptable performance review for 1991. J.A. at 68-71. He was put on a 120-day improvement plan and if he failed to improve within that time he would be discharged. Specific goals concerning communication and management skills were identified. Plaintiff acknowledged that some of the criticism of his management skills "may" be justified. McCrory Dep. at 142-60, J.A. at 221-33.
 
 
 10
 In the Spring of 1992, during plaintiff's probation period, Mr. Rogers again suggested that Plaintiff consider "early" retirement and gave plaintiff information on the company's retirement policies. McCrory Answer to Interrogatories at 18, J.A. at 105.
 
 
 11
 On July 2, 1992, shortly before his 120-day probation period was up, plaintiff sought out Richard Thesing, an Associate Director of the lab and Mr. Rogers' supervisor, to discuss plaintiff's job performance. Plaintiff told Mr. Thesing that he believed that Mr. Rogers was intentionally trying to make him look bad and was giving him conflicting signals about what he wanted and then blaming plaintiff for failing to do certain things. For instance, plaintiff stated that Mr. Rogers told plaintiff that he wanted plaintiff to have more client contact and keep up better with developments in the industry, but Mr. Rogers never took plaintiff on business trips to other facilities, instead taking one of the younger female chemists.
 
 
 12
 Plaintiff's medical condition was not mentioned, but, after the discussion, Mr. Thesing suggested to plaintiff that he might be better suited to "another position." Nothing further was said about the comment and plaintiff never asked if there was another position in the company to which he might be transferred because he was afraid it would jeopardize the job he currently had and he might end up with no job. McCrory Dep. at 180-87, J.A. at 243-50.
 
 
 13
 On July 6, 1992, plaintiff met with Mr. Rogers, Mr. Thesing and the company's human resources manager to discuss the 120-day improvement plan. Plaintiff was informed that he had failed to correct the named deficiencies. Plaintiff was placed on an additional 60-day performance improvement plan identifying essentially the same goals as the first plan. This plan required Plaintiff to meet daily with Mr. Rogers to go over scheduling and priorities for the lab.
 
 
 14
 In August 1992, a month before plaintiff was terminated, Lisa Thurman, a 25-year old chemist in the lab working under Plaintiff, was "promoted" to a position within the lab with an unspecified title. With this promotion, Ms. Thurman was to prepare a daily schedule for the lab. Plaintiff was also to prepare a schedule. Plaintiff testified that he believed the company was testing Ms. Thurman to see if she could take over plaintiff's position. Plaintiff testified that he and Ms. Thurman generally came up with the same schedule independently. The record is not clear on what happened when the schedules conflicted.
 
 
 15
 On September 14, 1992, plaintiff was discharged. He had just turned 54 years old and was, therefore, only about 11 months short of eligibility for medical benefits under defendant's retirement policy. The record is in conflict as to whether plaintiff's position was filled. There is testimony by plaintiff and his coworkers that Ms. Thurman took over the bulk of plaintiff's duties after plaintiff left. The other workers in the lab testified that they believed Ms. Thurman replaced plaintiff and was now the group leader because she coordinated the work flow and talked to the customers and handled the day-to-day problems in the lab as they arose. Dep. of S. Holloway at 37, J.A. at 354; Dep. of H. Payne at 88-89, J.A. at 369-70. In addition, defendant also hired a 25-year old chemist to work in the lab shortly after plaintiff left. Defendant disputes that Ms. Thurman replaced plaintiff and states that plaintiff's duties were spread to several persons.
 
 II.
 
 16
 This Court reviews grants of summary judgment de novo. Baggs v. Eagle-Picher Indus., Inc., 957 F.2d 268, 271 (6th Cir.), cert. denied, 506 U.S. 975 (1992). We may affirm the court below if we determine from the pleadings, affidavits and other submissions "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). We must view the evidence submitted in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).
 
 
 17
 Each of plaintiff's three discrimination claims is subject to the burden-shifting analysis set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), and Texas Dep't of Comm. Affairs v. Burdine, 450 U.S. 248, 256 (1981), and their progeny. See also Bruce v. Western Auto Supply Co., 669 S.W.2d 95, 97 (Tenn.App.1984) (prima facie case of age discrimination under Tennessee Human Rights Act established by using criteria set out in McDonnell Douglas ). The plaintiff must demonstrate that he or she meets the requirements of the prima facie case. If the plaintiff makes a prima facie case by meeting these requirements, the burden then shifts to the defendant to "articulate some legitimate, nondiscriminatory reason for the employee's discharge." McDonnell Douglas, 411 U.S. at 802. If plaintiff meets the stated elements or demonstrates other direct statistical proof of discrimination, a rebuttable presumption of discrimination is raised. Id. The employee is then required to show that the defendant's proffered reason for discharge is pretextual. Pretext is shown directly by establishing that the proffered reason is unworthy of credence or indirectly by showing that discriminatory reasons "more likely" motivated the employer's decision. Burdine, 450 U.S. at 256. The plaintiff is required to produce evidence that either age or disability, or both, was a factor in the decision to fire and that "but for" the discrimination, plaintiff would not have been fired. Phelps v. Yale Security, Inc., 986 F.2d 1020, 1023 (6th Cir.), cert. denied, 114 S.Ct. 175 (1993).
 
 
 18
 A. Prima Facie Case Under the Age Discrimination Claim
 
 
 19
 In an age discrimination suit brought under the Tennessee Human Rights Act, the ultimate issue is whether age was a determining factor in terminating the employee. Bruce v. Western Auto Supply Co., 669 S.W.2d 95, 97 (Tenn.App.1984). The plaintiff has the burden of establishing the prima facie case by using the criteria set forth in McDonnell-Douglas or through direct, circumstantial or statistical evidence. Id.[2]
 
 
 20
 To establish a prima facie case of age discrimination under McDonnell-Douglas, plaintiff must show that (1) he is a member of the protected class, here over 40 years of age; (2) he was subject to an adverse employment decision; (3) he is qualified for the position and (4) he was replaced by a person not in the protected class.
 
 
 21
 The district court presumed without finding that plaintiff made out a prima facie case, District Court op. at 7-8 n. 2. Defendant disputes whether the prima facie case is made by plaintiff because it contends that plaintiff was not "qualified" for the position and because no one "replaced" him. We find that the plaintiff meets the elements of the prima facie case for age discrimination.
 
 
 22
 First, plaintiff falls within the protected classes for age and disability claims. He is over 40 and has a recognized disability. Second, plaintiff is "qualified" for the position. Qualified in this case means objectively qualified, such as proper training, credentials, etc. Under any objective standard Plaintiff was "qualified" for the job. He was a college-educated chemist. He was employed by defendant for 32 years and was a supervisor or group leader for almost twenty years. Plaintiff won many awards for his work. All his reviews until 1989 were acceptable. It is difficult to dispute his objective qualifications for the job for purposes of establishing a prima facie case. If the plaintiff here can be found "not qualified" for the position, then most plaintiffs in discrimination cases will be barred from pursuing their claims before ever getting to the employer's conduct. The claim will be decided at the threshold level because the employer can simply state that the plaintiff is "not meeting expectations" and pile up a myriad of small infractions to demonstrate the employee's failings. As the prima facie case is not intended to be burdensome, searching analysis at this stage on whether a plaintiff is "qualified" is improper. Third, plaintiff was discharged. Fourth, the record demonstrates that Ms. Thurman, who is 25 years old, replaced plaintiff for purposes of the prima facie case. The testimony of plaintiff's coworkers in the lab indicates that Ms. Thurman now does the bulk of plaintiff's former duties. Dep. of S. Holloway at 37, J.A. at 354; Dep. of H. Payne at 88-89, J.A. at 369-70. It is not required, as implied by defendant in its brief, that Ms. Thurman undertake every single duty of plaintiff to qualify as his replacement for purposes of the analysis undertaken here. Furthermore, Ms. Thurman sits at plaintiff's former desk and Ms. Thurman's coworkers testified that they now look to her as the new group leader. Nor does defendant dispute that Ms. Thurman was "promoted" in August of 1992, the month before plaintiff was discharged, although defendant did not make any change in Ms. Thurman's title. Contrary to the assertion of defendant, we find that plaintiff was "replaced" by Ms. Thurman for purposes of the analysis here.
 
 B. Prima Facie Case Under the ADA
 
 23
 We also find that plaintiff meets the requirements for a prima facie case of discrimination under the ADA. The Americans with Disabilities Act of 1990 prohibits discrimination against a "qualified individual with a disability...." 42 U.S.C. § 12112(a). The determination of whether an individual is qualified is determined by (1) whether the individual meets the necessary prerequisites for the job, such as education, training, experience, etc. and (2) whether the individual can perform the essential job functions with or without reasonable accommodation. See 42 U.S.C. § 12111(8); 29 C.F.R. § 1630.2(m).
 
 
 24
 Despite defendant's arguments to the contrary, we find that the plaintiff here is "a qualified individual with a disability." As described above, plaintiff's education and work experience are more than adequate for the position he held. Indeed, he held supervisory positions with defendant for twenty years. Plaintiff also demonstrated that he could perform the essential functions of the job with or without reasonable accommodation as confirmed by the testimony of those he supervised who uniformly testified that plaintiff was adequately performing the job.
 
 
 25
 To make out a prima facie case under the ADA, plaintiff must show that (1) he suffered from a disability as defined in 42 U.S.C. § 12102(2), (2) he was qualified to perform the essential functions of the job and (3) he was terminated or otherwise treated differently from others similarly situated. Monette v. Electronic Data Sys. Corp., 90 F.3d 1173 (6th Cir.1996).
 
 
 26
 First, it is undisputed that plaintiff's anxiety/depression disorder, which Plaintiff takes medication to control, is a disability for purposes of the ADA. Second, as described above, plaintiff is a "qualified" individual and third, it is undisputed that plaintiff was terminated.
 
 
 27
 C. Defendant's Stated Reasons for the Discharge
 
 
 28
 Because we find that the prima facie case is made for both the age and disability discrimination claims, we turn to the reasons given for Plaintiff's dismissal. Plaintiff's supervisors testified that they wanted plaintiff to improve his communication and management skills and he failed to do so. We note, however, that although defendant states that plaintiff had problems managing and communicating with his staff, the testimony by the employees who worked for plaintiff indicate that they had no trouble with plaintiff's managerial or communication style. Dep. of H. Payne at 15, 38, 59, J.A. at 360, 362, 366; Dep. of S. Holloway at 7-9, 15, J.A. at 348-51; Affidavit of M. Quinton, J.A. at 101-02. Defendant submitted no evidence from plaintiff's subordinates in the lab to counter plaintiff's evidence, leaving only the supervisor's statements in the reviews that plaintiff had trouble communicating with his subordinates.
 
 D. Plaintiff's Rebuttal
 
 29
 The burden then shifts back to plaintiff to demonstrate that the reasons given are a pretext for discrimination. To rebut the employer's stated nondiscriminatory explanation for discharge, the plaintiff must show by a preponderance of the evidence that the proffered reasons (1) have no basis in fact, (2) did not actually motivate the discharge or (3) were insufficient to motivate the discharge. Chappell v. GTE Prods. Corp., 803 F.2d 261, 265 (6th Cir.1986), cert. denied, 480 U.S. 919 (1987).
 
 
 30
 Plaintiff here relies on the first and second type of showing listed above to rebut the defendant's stated reasons. First, as described above, plaintiff submitted testimony from coworkers under his supervision stating that they did not have any trouble with plaintiff's managerial or communication style. This testimony contradicts the testimony of plaintiff's supervisors concerning the actual reasons for his discharge and raises a genuine issue of material fact.
 
 
 31
 Under the second type of showing listed above, plaintiff submitted evidence of statements made by his supervisors concerning his plans to retire. Age- or disability-related comments referring directly to the employee may support an inference of discrimination. This Court has previously held that statements suggesting early retirement may suggest an improper motive. Danielson v. City of Lorain, 938 F.2d 681, 684 (6th Cir.1991).
 
 
 32
 The first query came in 1991, a year before plaintiff's termination, and the second came several months before plaintiff's firing. Although Mr. Rogers disputes the first instance, for purposes of review of a grant of summary judgment, we must view the evidence in favor of the plaintiff. Furthermore, there is testimony that Mr. Rogers, Plaintiff's supervisor, showed favoritism to the younger, apparently nondisabled female employees. For example he took them, not Plaintiff, on business trips despite repeatedly telling plaintiff to become more involved with the customers. Dep. of H. Payne at 48, 66, 90-91, J.A. at 365, 367, 371-72.
 
 
 33
 Plaintiff was also advised by Mr. Henze, one of his supervisors, during the December 1991 meeting about plaintiff's performance that Mr. Henze was "uncomfortable" with plaintiff talking to customers while plaintiff was on medication. McCrory Dep. at 112-13, 130, J.A. at 202-03, 211.
 
 
 34
 Although the conduct of plaintiff's supervisors, looked at separately, may not be sufficient to raise a genuine issue of material fact as to the existence of discrimination as a "determining" factor in plaintiff's discharge, when viewed together, there is evidence that plaintiff's supervisors may have been uncomfortable with plaintiff's mental illness and, compounded with his age, these improper motives may have constituted the real reasons for his discharge. The references to retiring, whether for age or health reasons, the comment about not talking to clients while on antidepressant medication and the alleged and verified disparate treatment between younger employees and Plaintiff may provide evidence from which a jury could infer that Plaintiff's age or handicap was a determining factor in Plaintiff's termination. These statements and the conflicting testimony between plaintiff's supervisors and those who worked for him, while not proof of discrimination, would permit a reasonable juror to find that the reasons given by defendant for plaintiff's discharge were pretextual and could have motivated the discharge here. Accordingly, we believe the evidence is sufficient to survive summary judgment on the issues of age and handicap discrimination. See Flynn v. Shoney's Inc., 850 S.W.2d 458 (Tenn.App.1992) (age discrimination under Tennessee Human Rights Act); Bruce v. Western Auto Supply Co., 669 S.W.2d 95 (Tenn.App.1984) (same).
 
 E. Benefits Discrimination Claim
 ERISA states:
 
 35
 It shall be unlawful for any person to discharge ... a participant or beneficiary ... for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan.
 
 
 36
 29 U.S.C. § 1140. If there is no direct evidence of intent to discriminate, as here, the case law directs that the burden-shifting analysis used in the age and disability cases should also be applied to the benefits situation. Humphreys v. Bellaire Corp., 966 F.2d 1037, 1043 (6th Cir.1992). The plaintiff must show the employer had a specific intent to violate ERISA. The plaintiff is not required to show that the employer's sole reason for discharge was to interfere with giving pension benefits, only that it was a "motivating" or "determining" factor. Id. This circuit has held that proximity to vesting and a showing of cost savings is not sufficient, standing alone, to entitle a plaintiff to a trial. Id.
 
 
 37
 Nothing in the record supports plaintiff's claim that he was discriminated against because he would be eligible for "early" retirement benefits within a year of his discharge. To the contrary, it appears from the statements of Mr. Rogers as though defendant would have given plaintiff his benefits if he had been 55 years old and therefore eligible to retire and had elected to do so.
 
 III.
 
 38
 For the foregoing reasons, we reverse the district court and remand as to the age and disability discrimination claims and we affirm the district court as to the claim of benefits discrimination.
 
 
 
 *
 The Honorable David D. Dowd, Jr., District Judge, United States District Court for the Northern District of Ohio, sitting by designation
 
 
 [1]
 References to the Joint Appendix filed in this action will be referred to hereinafter as "J.A. at ____."
 
 
 [2]
 We note that generally where, as here, the federal issues (ERISA and ADA claims here) are dismissed before trial, district courts should decline to exercise jurisdiction over state law claims. United Mine Workers v. Gibbs, 383 U.S. 715 (1966). The district court here did not explain why it exercised its supplemental jurisdiction over the state claim after dismissing the two federal claims. In any event, as we are reversing the district court on both the age and ADA claims, we need not decide whether the district court was correct in exercising its supplemental jurisdiction