Bruce **CHITWOOD**, Plaintiff,

v.

**DUNBAR ARMORED, INC.**, Defendant.

No. C–1–01–588.

United States District Court, S.D. Ohio, Western Division.

March 27, 2003.

Randolph Harry Freking, Megan E. Clark, Freking & Betz, Cincinnati, OH, for plaintiff.

Michael Wesley Hawkins, Jonathan Britton Allison, Dinsmore & Shohl, Cincinnati, OH, Howard K. Kurman, Offit, Kurman & Alms PA, Owing Mills, MD, for defendant.

### ORDER

SPIEGEL, Senior District Judge.

This matter is before the Court on Defendant Dunbar Armored, Inc.'s Motion for Summary Judgment (doc. 16), Plaintiff's Memorandum in Opposition (doc. 18), and Defendant's Reply (doc. 22). The Court will also consider Plaintiff's Notice of Supplemental Authority (doc. 28) and Defendant's Response to such notice (doc. 30).

### BACKGROUND

The following facts have been derived from the various pleadings, motions, and responses in this matter. This is a case concerning Plaintiff's discharge from his employment with Defendant Dunbar Armored, Inc. (hereinafter "Dunbar")(doc. 1). Plaintiff, alleges that he was terminated in March 2001 because of his age, after having served as a Dunbar branch manager for nine years, and after having worked in the armored car industry for thirty-four years (*Id.*). Plaintiff alleges that he was fully qualified for his position, had been asked to perform nationwide training of other employees, and in 1998 received the award for best branch manager of the central region (*Id.*). According to Plaintiff, his positive working experience at Dunbar started to change in 1998 after he came under the direct supervision of regional vice-president Guy Childress (*Id.*). Plaintiff alleges that Childress repeatedly used age epithets, referred to Plaintiff as "old man," and asked Plaintiff how he could handle a trip to Las Vegas at his age (*Id.*). Plaintiff alleges that Childress sabotaged Plaintiff's work, introduced a younger employee to others as Plaintiff's replacement, and did indeed replace Plaintiff, who was 56 at the time of his discharge, with a substantially younger employee after Plaintiff was fired (*Id.*). Plaintiff's Complaint includes an age discrimination claim pursuant to O.R.C. Ch. 4112 and pursuant to Ohio public policy, as well as promissory estoppel and defamation claims (*Id.*). Plaintiff is in federal court on diversity jurisdiction and has not asserted a claim under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.*

Defendant filed its Motion for Summary Judgment on October 1, 2002, arguing that there are no genuine issues of material fact as to Plaintiff's claims and Defendant is entitled to judgment as a matter of law (doc. 16). Defendant argues that there is no evidence that Plaintiff was discharged

because of his age, rather the evidence shows that Plaintiff was really discharged for numerous performance problems (*Id.*). Defendant cites complaints of other employees and of customers (*Id.*). Defendant argues that Plaintiff was rude to customers on the telephone, even hanging up on them (*Id.*). Defendant further argues that the evidence shows Plaintiff failed to follow company directives, left his weapon unattended on his desk in contravention of policy, and hired applicants in a manner that subjected the company to possible liability because applicants were routinely given physicals prior to being offered employment (*Id.*). For the same reasons, Defendant argues that the Ohio public policy claim fails (*Id.*). Finally, Defendant attacks Plaintiff's promissory estoppel claim as there is no evidence of a promise of continued employment or of reasonable reliance by Plaintiff, and attacks Plaintiff's defamation claim because there is no evidence of any defamatory statements or that any statements made between Dunbar employees were made with malice. *Id.*

## ANALYSIS

### I. Summary Judgment Standard

The narrow question that this Court must decide on a motion for summary judgment is whether there exists a "genuine issue as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). The Supreme Court elaborated upon the appropriate standard in deciding a motion for summary judgment as follows:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case. *Id.* at 321, 106 S.Ct. 2548; *Guarino v. Brookfield Township Trustees,* 980 F.2d 399, 405 (6th Cir.1992); *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir.1989). If the moving party meets this burden, then the non-moving party "must set forth specific facts showing there is a genuine issue for trial." Fed.R.Civ.P. 56(e); see *Guarino,* 980 F.2d at 405.

As the Supreme Court stated in *Celotex,* the non-moving party must "designate" specific facts showing there is a genuine issue for trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *Guarino,* 980 F.2d at 405. Although the burden might not require the non-moving party to "designate" facts by citing page numbers, " 'the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the non-moving party relies.' " *Guarino,* 980 F.2d at 405 (quoting *InterRoyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir. 1989), cert. denied, 494 U.S. 1091, 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990)).

Summary judgment is not appropriate if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Conclusory allegations, however, are not sufficient to defeat a motion for summary judgment. *McDonald v. Union Camp Corp.,* 898 F.2d 1155, 1162 (6th Cir.1990). Furthermore, the fact that the non-moving party fails to respond does not lessen the burden on the moving party or the court to demonstrate

that summary judgment is appropriate. *Guarino*, 980 F.2d at 410; *Carver v. Bunch*, 946 F.2d 451, 454–55 (6th Cir. 1991).

## II. Discussion

As an initial matter, Plaintiff stipulated in his Memorandum in Opposition that he does not oppose summary judgment on his promissory estoppel and defamation claims (doc. 18). As such, the Court will grant summary judgment on those claims while devoting its summary judgment analysis to the remaining Ohio state law age discrimination claim and Ohio public policy claim.

### A. The Ohio State Law Discrimination Claim

In order to establish a claim of age discrimination, Plaintiff may either introduce direct evidence of discrimination or prove circumstantial evidence that would support an inference of discrimination. *Kline v. Tenn. Valley Auth.*, 128 F.3d 337, 348 (6th Cir.1997), *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1081 (6th Cir.1994); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668,(1973); *Ackerman v. Diamond Shamrock Corp.*, 670 F.2d 66 (6th Cir.1982). The same evidentiary framework applies to discrimination claims brought under Title VII, the ADEA, 42 U.S.C. § 1981, and discrimination claims brought under Ohio state law. *Allen v. Ethicon, Inc.*, 919 F.Supp. 1093, 1098 (S.D.Ohio 1996). Plaintiff argues that he has adequately raised a genuine issue of material fact regarding age discrimination under both direct and indirect evidence theories *(Id.)*.

### I. Direct Evidence Theory

■ Direct evidence of discrimination occurs when either the decision-maker or an employee who influenced the decision-maker made discriminatory comments related to the employment action in question. *See Reeves v. Sanderson Plumbing*, 530 U.S. 133, 152, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000), *Ross v. Campbell Soup Co.*, 237 F.3d 701, 707–08 (6th Cir.2001). Plaintiff's direct evidence theory is premised upon allegations that his former supervisor Guy Childress repeatedly made derogatory age-related comments, that Childress issued discipline that served as a predicate for Plaintiff's termination, and that Childress contributed to and actually issued the termination decision *(Id.)*. Plaintiff recounts a number of occasions at which Childress would refer to Plaintiff as "old man," or "senior citizen" which are corroborated by a coworker, Glenda Walton *(Id.)*. Plaintiff notes when Childress discussed his termination with him, Childress told him that Plaintiff "wanted to retire anyway" *(Id.)*.

Defendant argues that Plaintiff has failed to connect the alleged comments by Childress to any employment decision, and that Childress was not the decision-maker, but rather Gretchen Benchoff, Vice President of Human Resources, working out of Defendant's Hunt Valley, Maryland location (doc. 22). Defendant further argues that the only employee who substantiated such derogatory age-related comments, Glenda Walton, resigned a year prior to Plaintiff's termination *(Id.)*. Defendant argues that the only age-related comment Plaintiff can produce that Childress made during Plaintiff's last year of employment was a benign statement made at a regional meeting, months in advance of Plaintiff's termination *(Id.)*.

The Court must draw all reasonable inferences in favor of the Plaintiff. The Court can reasonably infer that Childress' age-related comments are evidence of age-related animus directed at Plaintiff, and that the same animus drove Childress to

work for Plaintiff's termination. Despite Defendant's Reply focusing on Gretchen Benchoff as the decision-maker, Defendant's Motion states that Childress was "involved in conversations about whether to terminate the Plaintiff's employment" (doc. 16). Moreover, it would not be unreasonable for a jury to infer that if the work environment was indeed marked by such discrimination, that the only employee who could substantiate derogatory age-related comments is a former employee, Glenda Walton. The Court finds that there is a question of fact as to whether Childress' involvement in the termination of Plaintiff's employment was marked with age-related animus and affected the ultimate outcome. Though Plaintiff's direct evidence theory is thin, it survives Defendant's Motion for Summary Judgment.

## II. Indirect Evidence Theory

In order to prevail on a circumstantial evidence theory, Plaintiff must establish a prima facie case of age discrimination by proving that (1) he was over forty, (2) he was qualified, (3) he suffered an adverse employment action, and (4) he was replaced by a substantially younger employee or additional evidence shows that the employer was motivated by Plaintiff's age in making its decision. *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996).

Plaintiff argues that he has raised at least a genuine issue of material fact with regard to the existence of a prima facie case (doc. 18). The Court finds Plaintiff's position well-taken, as explained below.

The parties do not dispute that Plaintiff was over forty or that he suffered an adverse employment action. However, the parties dispute whether as a matter of law Plaintiff was qualified for his position and whether the age of Plaintiff's replacement

meets the prima facie requirement since the replacement himself was subsequently replaced with someone over forty years old.

### A. Plaintiff's Qualification For His Position

Defendant, citing *Ang v. Procter and Gamble Co.*, 932 F.2d 540, 548–49 (6th Cir.1991), argues that in order to show that he was qualified, Plaintiff must prove that he was performing his job at a level that met Defendant's legitimate expectations (doc. 16). Defendant argues that no other branch manager had the type or volume of complaints as Plaintiff did, nor failed to run monthly branch meetings, and that his "performance problems dated back a number of years" (doc. 22). As such, Defendant reasons, Plaintiff was unqualified for his position and cannot therefore plead a prima facie case.

Plaintiff argues that Defendant's approach is wrong in that it cannot use the same evidence to attack his qualifications as it does to justify the termination (doc. 18). Plaintiff argues that under *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 660–61 (6th Cir.2000) such an approach conflates the stages of the analysis and misapplies the rules governing the allocation of burden (*Id.*). Plaintiff posits that Defendant's argument that he is unqualified because of poor performance should be analyzed at the pretext stage rather than at the prima facie stage. Citing *McCrory v. Kraft Food Ingredients*, No. 94–6505, 1996 WL 571146 *4, 1996 U.S.App. LEXIS 26305 *13–14 (6th Cir. Oct. 3, 1996), Plaintiff argues that he only need to demonstrate that he is objectively qualified for his position in order to establish his prima facie case (*Id.*).

■ Defendant, without explicitly addressing *Cline*, 206 F.3d 651, or *McCrory*, 98 F.3d 1342, replied that the Sixth Circuit

requires Plaintiff to prove that he was performing his job at a level that met his employer's legitimate expectations in order to show that he was qualified for continued employment, citing, among other cases, *Clark v. Alcan Aluminum,* 41 Fed.Appx. 767, 775 (6th Cir.2002)(doc. 22). However, *Clark* presented a factual scenario in which the court noted that even had plaintiff established her prima facie case, she still would have lost for not having offered any evidence to counter defendant's proffered legitimate reason, her poor performance. 41 Fed.Appx. at 775. The *Clark* court, therefore, did not necessarily stop its analysis at the stage of the prima facie case. *Id.* The Court concludes that though poor performance has been considered by the Sixth Circuit in considering the qualification prong of the prima facie case, poor performance only precludes a prima facie case where plaintiff concedes he was not performing at a level that met his employer's legitimate expectations. *See Wexler v. White's Fine Furniture, Inc.,* 317 F.3d 564, 575 (6th Cir.2003), *citing McDonald v. Union Camp Corp.,* 898 F.2d 1155, 1160 (6th Cir.1990). Plaintiff here contests the proposition that his performance was poor. The Court further finds *McCrory* persuasive on this issue:

> If the plaintiff here can be found "not qualified" for the position, then most plaintiffs in discrimination cases will be barred from pursuing their claims before ever getting to the employer's conduct. The claim will be decided at the threshold level because the employer can simply state that the plaintiff is "not meeting expectations" and pile up a myriad of small infractions to demonstrate the employee's failings. As the prima facie case is not intended to be burdensome, searching analysis at this stage on whether a plaintiff is "qualified" is improper.

*McCrory v. Kraft Food Ingredients,* No. 94–6505, 1996 WL 571146 *4, 1996 U.S.App. LEXIS 26305 *14(6th Cir. October 3, 1996).

█ Defendant further argues that Plaintiff has not disputed the vast majority of numerous performance problems it has cited as reasons for terminating him and has failed to show he was qualified (doc. 22). However, Defendant's characterization disregards Plaintiff's various disputes as to alleged performance problems, including the classification of a customer email as a complaint, the interpretation of a secretary's reasons for quitting, the alleged inconsistent application of a gun policy, the interpretation of a memo to branch managers about meetings, the creation of EEOC liability, and Plaintiff's proffered deposition testimony of four employees who expressed respect for him (doc. 18).

The Court finds Plaintiff's citation to *Cline,* 206 F.3d 651, and *McCrory,* 1996 WL 571146, 1996 U.S.App. LEXIS 26305, persuasive for the proposition that he has adequately established that he was objectively qualified. The *Wexler* decision confirms the conclusion that the focus at this point should be on Plaintiff's objective qualifications, such as his experience in the industry and demonstrated possession of the required general skills. 317 F.3d 564, 575–76. Moreover, the undisputed facts show that in March 1999 Plaintiff received an award for Top Performer in the Central Region; while only two years later after coming under the supervision of Childress, he received his letter of termination based on alleged poor performance. Drawing all reasonable inferences in favor of the Plaintiff, these facts could indicate that Plaintiff's fall from the position of "Top Performer" to the point of termination was precipitated by age-related animus. Plaintiff's "Top Performer" status also clearly throws into question Defendant's explicit

claim that Plaintiff's alleged "performance problems dated back a number of years" (doc. 22). That said, the parties' dispute on this point is likely irrelevant as Defendant has "done everything that would be required of him if the plaintiff had properly made out a prima facie case." *See United States Postal Board of Governors v. Aikens,* 460 U.S. 711, 715, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983). Defendant's citation to numerous performance problems of Plaintiff serve as its presentation of a legitimate non-discriminatory reason for termination. As such, the burden shifts back to Plaintiff to show that such reason is pretextual. Before conducting such analysis, however, the Court will briefly address the question of the temporary nature of Plaintiff's substantially younger replacement, the final aspect to Plaintiff's prima facie case in dispute.

## B. Plaintiff's Replacement

■ As the Court finds that under *Aikens,* 460 U.S. 711, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983), Defendant's response takes the analysis beyond the prima facie stage, it is unnecessary to address the arguments about Plaintiff's replacement. However, for the sake of clarity, the Court will address the question to eliminate any doubt as to the viability of Plaintiff's prima facie case.

Defendant essentially argues that though Plaintiff was replaced with a substantially younger person, that person was subsequently replaced with a person just three years younger than Plaintiff (doc. 22). Plaintiff essentially argues that the prima facie case was met as soon as a younger person replaced him, that under *Cline* the prima facie requirement is not onerous, and that it is not so important how long that person retained the position or whether that person was subsequently replaced by a contemporary of Plaintiff (doc. 18).

The Court finds well-taken the argument that under *Cline* the prima facie requirement is not onerous. 206 F.3d 651. Plaintiff has met the requirement of showing that he was replaced with someone substantially younger, and at the very least has raised a genuine issue of material fact as to this issue. Consequently, Plaintiff has pleaded a prima facie case for age discrimination.

## III. The Legitimacy of the Termination Decision

■ After Plaintiff presents a prima facie case, Defendant must present a legitimate non-discriminatory reason for termination. *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). In response, Plaintiff must show that Defendant's articulated reason for the termination is a pretext for age discrimination. *Id.* at 507, 113 S.Ct. 2742. Plaintiff can prove pretext by showing that "(1) the proffered reasons had no basis in fact, (2) the proffered reasons did not actually motivate his discharge, or (3) they were insufficient to motivate discharge." *Manzer v. Diamond Shamrock Chemicals Co.,* 29 F.3d 1078, 1084 (6th Cir.1994). The Court must not invoke the business judgment rule to exclude consideration of evidence relevant to the question of pretext. *Wexler v. White's Fine Furniture, Inc.,* 317 F.3d 564, 577.

In this case, Defendant has provided a list of reasons allegedly supporting its decision to terminate Plaintiff on the basis of poor performance. Defendant further argues that "in any event, as a matter of law, attacking the reasonableness of Dunbar's decision is insufficient to establish pretext" (doc. 22) (*citing Askin v. Firestone Tire & Rubber Co.,* 600 F.Supp. 751, 755 (E.D.Ky. 1985), *Stumpf v. Cincinnati, Inc.,* 863 F.Supp. 592, 596 (S.D.Ohio 1994) *aff'd* 70 F.3d 116 (6th Cir.1995)). The Court finds,

however, that under *Wexler* it cannot ignore inferences in favor of Plaintiff that can be drawn from the evidence about whether it was reasonable to terminate Plaintiff for alleged poor performance. 317 F.3d 564, 577. Plaintiff raises a number of factual disputes as to each of Defendant's proffered reasons such that a jury could reasonably reject Defendant's explanation of the termination. As such, summary judgment is precluded for Defendant.

Gretchen Benchoff made the formal decision to terminate Plaintiff's employment explaining that the primary reasons were a customer issue, alleged dishonesty in reporting the reason why Plaintiff's secretary Colleen Wiethofer quit, and a pattern of poor performance (doc. 18). Plaintiff argues that the customer issue Benchoff referred to emanated from an email that actually rated overall service as "satisfactory" (*Id.*). That same email did not indicate, unlike Plaintiff's termination letter, that he had accused the customer of theft (*Id.*). These facts as to the "customer issue," with inferences made in favor of Plaintiff, demonstrate that a jury could reasonably reject Defendant's explanation.

As for Plaintiff's alleged dishonesty in reporting the reason for the resignation of his secretary, Colleen Wiethofer, Plaintiff states that she told him she was leaving to make more money (*Id.*). Furthermore, in her deposition testimony, Wiethofer testified that she never would have told Plaintiff that she was leaving because of him, and in her exit interview represented that she had never complained about him (*Id.*). These facts throw Defendant's justification based on this alleged dishonesty into question. Because Wiethofer did not tell Plaintiff that she was quitting because of him, it is problematic to accuse him of dishonesty in reporting a different reason.

Defendant's final proffered primary reason for discharging Plaintiff was his pattern of poor performance. This pattern was marked by a failure to comply with the company's gun policy, failure to run all monthly branch meetings, failure to comply with proper hiring practice, and a number of negative exit interviews by ex-employees complaining about Plaintiff (*Id.*). Defendant argues that in contravention of policy, Plaintiff left his weapon unattended on his desk, when he left the building (doc. 16). However, Glenda Walton testified that Childress did the same thing (doc. 18), which raises an issue of fact as to the legitimacy of this proffered explanation.

Defendant argues that Plaintiff was the only branch manager who failed to run monthly branch meetings (doc. 22). Plaintiff argues that he was never told to personally run such meetings, and that at a Regional Meeting all branch manager were merely instructed to ensure that such meetings occurred (doc. 18). Plaintiff argues that he had delegated such responsibility (*Id.*). As such, there is clearly a factual dispute concerning whether there was a clearly articulated expectation that branch managers personally run branch meetings.

Defendant next argues that Plaintiff, despite repeated warnings, failed to comply with proper hiring practice, thus creating EEOC liability (doc. 16). Plaintiff responds that Childress' series of derogatory age-related remarks created EEOC liability and he was not discharged (doc. 18). Plaintiff argues that despite his complaints about Childress, no follow-up occurred (*Id.*). Drawing all reasonable inferences in favor of Plaintiff, the Court concludes that this apparent uneven treatment raises an issue of material fact as to the legitimacy of this explanation.

Finally, Defendant cites to a number of negative comments about Plaintiff in employee exit interviews (doc. 16). However, Plaintiff signals that at least one of those

forms included complaints about other managers, and was written by an employee whom Childress and Art Schossow, Senior Operating Vice President for the Midwest, Central, Southwest, and Mountain Regions, had directed Plaintiff to fire (doc. 18). Plaintiff further cites to the testimony of four employees who testified positively as to his work performance and/or their respect for him (*Id.*). The Court finds that there is a genuine issue as to the legitimacy of Defendant's reliance on negative employee exit interviews.

In summary, this age discrimination case on its facts could go either way. The conflicting proof and the inferences therefrom raise genuine issues of material fact and preclude the grant of summary judgment. Defendant's evidence is not "so one-sided" that it "must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## A. The Ohio Public Policy Claim

Plaintiff argues under *Painter v. Graley*, 70 Ohio St.3d 377, 639 N.E.2d 51 (1994) that an employer cannot terminate an employee for a reason that violates the articulated public policy of the state of Ohio (doc. 18). Plaintiff states that the public policy of Ohio opposes age discrimination, and that as he has stated a prima facie case for age discrimination, summary judgment should not be granted on this claim (*Id.*). Defendant's argument in opposition to the Ohio public policy claim is premised upon its view that Plaintiff's prima facie case fails. As the Court has rejected Defendant's view, the Court similarly finds no basis for a grant of summary judgment on Plaintiff's Ohio public policy claim.

## CONCLUSION

The Court finds that Defendant's Motion for Summary Judgment, which is premised on the theory that Defendant fired Plaintiff for alleged poor performance, fails because Plaintiff has successfully raised a prima facie case of age discrimination and has raised numerous issues of material fact as to the legitimacy of Defendant's action. For the same reasons, the Court rejects Defendant's attack of Plaintiff's Ohio public policy claim. However, as Plaintiff's response (doc. 18) concedes that he does not oppose summary judgment on his promissory estoppel and defamation claims, the Court grants summary judgment on those claims.

Accordingly, the Court hereby DENIES Defendant Dunbar Armored, Inc.'s Motion for Summary Judgment on Count I of Plaintiff's Complaint, Age Discrimination pursuant to Ohio Rev.Code § 4112, and Count IV, Breach of Ohio Public Policy (doc. 16). However the Court GRANTS Defendant Summary Judgment on Counts II and III of Plaintiff's Complaint, for Promissory Estoppel and Defamation under Ohio law (doc. 16).

SO ORDERED.