[Cite as *Peters v. Highland Hills*, 2024-Ohio-2366.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

GEORGE PETERS,                           :

     Plaintiff-Appellant,          :

                                        No. 113372

     v.                            :

VILLAGE OF HIGHLAND HILLS,                :

     Defendant-Appellee.           :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** June 20, 2024

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-22-970911

---

### *Appearances:*

Mark P. Herron, *for appellant.*

Baker | Dublikar, Gregory A. Beck, and Andrea K. Ziarko,
*for appellee.*

MICHAEL JOHN RYAN, J.:

{¶ 1} Plaintiff-appellant, George Peters, appeals from the trial court's

October 2023 judgment granting the motion for summary judgment of defendant-

appellee, the Village of Highland Hills. After a thorough review of the facts and pertinent law, we affirm.

**Procedural History**

{¶ 2} Peters filed this age-discrimination case in November 2022, after he was not awarded a promotion to chief of police of the village's police department. The village filed an answer in which it generally denied Peters's allegation and asserted several defenses. The parties engaged in discovery and after the completion thereof, the village filed a motion for summary judgment; Peters opposed the motion. In an October 2023 judgment, the trial court found that there were no genuine issues of material fact to be litigated and granted the village's motion for summary judgment. Peters appeals and raises the following sole assignment of error for our review:

I.    The trial court erred in granting the village's motion for summary judgment on Mr. Peters' claim for age discrimination because there are genuine issues of material fact as to whether the village's decision to not promote Mr. Peters to chief of police was because of age.

**Factual Background and Summary Judgment Motion**

{¶ 3} The village promoted Lieutenant Markrendell Campbell to the chief of police position. It is undisputed that Campbell is substantially younger (under the age of 40 at the time of the promotion) than Peters; Peters is (and was at the relevant time) over 40 years old.

{¶ 4} Discovery in this case involved testimony (via deposition and/or affidavits) from the following individuals: (1) Michael Booker, the mayor of

Highland Hills, who was appointed in 2018, and who was the appointing authority for all department heads, including chief of police;[1] (2) plaintiff-appellant Peters; and (3) Campbell, who received the appointment as the chief of police. The village relied on this evidence in its motion for summary judgment.

**Village's Position**

{¶ 5} According to Mayor Booker, when he was appointed mayor of the village in 2018, employees in the police and fire departments were suffering from low morale and administrative changes were necessary. Mayor Booker hired Dalton Preston, a 28-year veteran of the Cleveland Division of Police. Initially, Preston served as a lieutenant; the mayor later appointed him to serve as the village's chief of police.

{¶ 6} Chief Preston hired Peters for a part-time position with the village's police department after Peters retired from the Cleveland Division of Police in 2018. One of the goals in hiring Peters was that he would serve as a mentor for the officers on the village's force. The village held the police commission for Peters, which enabled Peters to continue to function as a law enforcement official and a private security officer in Ohio.

{¶ 7} Mayor Booker testified that Chief Preston was content on being a "part-time" administrator and delegated much of his responsibilities to Lieutenant Campbell. According to Booker, the police department was not progressing in the

---

[1] Prior to becoming the village's mayor, Booker had a 27-year career with the United States Marine Corps, during which he worked in human resources and employee recruitment capacities.

manner he envisioned under Chief Preston's leadership and, thus, after two years, Preston elected to resign.

{¶ 8} Four or five people, including Peters and Campbell, applied for the chief position. Peters contends that he was not interviewed for the position; Booker contends that Peters was interviewed. Peters does admit that he met with Booker in private on two separate occasions to discuss the position; however, Peters contends that the meetings were on his initiative, not the mayor's.

{¶ 9} Mayor Booker testified that Peters told him that he wanted to end his career — which he envisioned happening in approximately two years — as a police chief. According to the mayor, he was looking for an individual to serve as chief who was willing to commit more than a couple of years; rather, he was looking for someone who would "fight through the tough times that a small community has" and commit to being on the job for a while. Along with Peters's desire to retire in the near future, the mayor did not think Peters best filled the requirements he was looking for.

{¶ 10} Specifically, Mayor Booker was interested in building community within the force and, according to him, most of the officers on the force had never even met Peters or knew who he was. In the preceding two years that Peters had been on the force, he had logged an approximate total 47 hours; the mayor testified that most of that time was due to "mandatory appearances, range time, and training that only benefitted himself."

{¶ 11} Regarding Campbell, he began working for the village in 2010 as an auxiliary officer. Campbell had a brief resignation from the village before he came back full-time in 2016. When he came back in 2016, Campbell started as a patrol officer and advanced first to sergeant and then to lieutenant. Mayor Booker testified that Campbell had the respect of the other officers, the village council, and the community at large.

{¶ 12} Mayor Booker promoted Campbell to chief of police. The mayor testified that the promotion had nothing to do with age. Rather, the mayor maintained that he believed Campbell best fit with his goals for the police force.

**Peters's Position**

{¶ 13} In opposition to the village's motion for summary judgment, Peters contended that (1) he (and two of the other applicants) had significantly more law enforcement experience than Campbell, (2) Campbell falsified his resume, (3) Campbell had significant disciplinary history while on the village's police force, and (4) Mayor Booker impermissibly "pre-selected" Campbell.

**Qualifications**

{¶ 14} Peters submitted his own resume, as well as the resumes of two other applicants who were over the age of 40. According to Peters's resume, at the time he applied for the chief position, he had almost 30 years of law enforcement. Peters's law enforcement experience included "high profile assignments," such as security detail for the 2012 Presidential Inauguration, 2014 Gay Games, and the 2016 Republican National Convention.

{¶ 15} According to the resumes of the other two applicants Peters submitted, one had over 20 years of law enforcement experience, including in leadership positions, and the other had 27 years of law enforcement experience.

{¶ 16} Peters contended that Lieutenant Campbell's resume was "strikingly thin" on experience, with only 12 years of law enforcement experience. Peters contended that Campbell's responsibilities with the village primarily related to administrative tasks such as preparing reports of departmental activity, scheduling, and managing the department's budget. And, according to Peters, Campbell's prior experience primarily related to investigating traffic accidents, property crimes, identity theft, and, in one prior position, functioning more like a security guard than a police officer.

{¶ 17} Further, Peters contended that Campbell falsified his resume. Specifically, Campbell's resume stated that he served as a lieutenant for the village since 2010, but Campbell testified at his deposition that he had served as a lieutenant for only a few months prior to his appointment as chief of police, that he had been appointed lieutenant by Mayor Booker, and that he had actually served as a sergeant for approximately two years prior to serving as a lieutenant. Peters contended that because Mayor Booker did not take office until 2018, Mayor Booker could not have hired Campbell as a lieutenant in 2010. Peters noted that Campbell's resume did not state that he ever served as a sergeant for the village.

{¶ 18} Citing another alleged discrepancy, Peters noted that Campbell testified at his deposition that he resigned his employment with the village at the

request of the then-chief of police for approximately seven months during which he worked part-time for the East Cleveland Division of Police, but Campbell's resume did not reference this gap in service, the forced resignation, or his employment with the East Cleveland police.

{¶ 19} Peters contended that "no explanation is provided by the Village regarding the discrepancies between Mr. Campbell's resume and his sworn deposition testimony on this critical issue pertaining to his experience and qualifications."

### Campbell's Past Discipline Issues

{¶ 20} It is undisputed that Campbell was disciplined by the village for past incidents. One such incident that Peters mentioned in his opposition to the village's summary judgment motion, which Campbell called "horseplay," involved Campbell participating in a game of "quick draw" with loaded guns inside the village police station and in the presence of other officers. Campbell acknowledged that the safety was off on his gun at the time of the incident and that his gun could have discharged. Peters contended that this incident demonstrated "a clear lack of sound judgment, integrity, and tact" all of which were requirements for the chief of police position.

{¶ 21} Campbell also had been disciplined for tardiness and for improperly having his fiancee in his patrol car. Further, Campbell admitted to an incident where he wrote "don't shoot" on his palms and posted a picture of it on Facebook; the incident led to his previously mentioned requested resignation.

**Alleged Preselection of Campbell**

{¶ 22} Peters contended that reasonable minds could find that the village's application process was a "charade," because the evidence tended to demonstrated that Mayor Booker had preselected Campbell to be the chief. Peters relies on Campbell's deposition testimony, wherein he stated that he did not have any interest in serving as chief of police, and in fact, was planning on leaving the village. However, he was approached by Mayor Booker in September 2021, prior to the resignation of the former Chief Preston and told by Mayor Booker that he would be offered the chief position if he stayed with the village.

**The Village's Reply**

{¶ 23} The village filed a reply brief to Peters's brief in opposition. In its reply, the village maintained that Peters's mention of an "alleged discrepancy in Campbell's resume" was a "red herring." The village explained as follows: "Campbell was a Lieutenant when he submitted the resume, and because Campbell had been working for the Village since 2010 (minus a brief resignation), full time since 2016, the mayor and Council were well aware of what his positions were." The village therefore maintained that there was "no dispute that at the time of Chief Preston's resignation, Campbell was the senior officer in the department." The village acknowledged that Peters may have had more law enforcement experience, but maintained that "Mayor Booker simply felt that, based upon his day-to-day interaction with Campbell and his understanding of what types of leadership both

candidates would bring to the table, the choice was clear Campbell should be promoted to police chief."

{¶ 24} Responding to Peters's contention about Campbell's disciplinary history, the village stated that Mayor Brooks was unaware of it at the time he hired Campbell as chief because the history was not in Campbell's personnel file, but even had the mayor known, he would have made the same recommendation to village council because the mayor did not feel Campbell's prior actions reflected on his ability to lead the police department as chief. The village further noted that Peters failed to mention his own past disciplinary incidents.

{¶ 25} Regarding Peters's preselection claim, the village contended that the village's council had to approve the mayor's selection and there was no evidence that the council had preselected Campbell. The village further contended that any evidence that Mayor Booker wanted the village council to hire Campbell was based on Campbell's performance within the village as compared to Peters's performance.

**Trial Court's Judgment**

{¶ 26} Construing the evidence in a light most favorable to Peters, the trial court found that "reasonable minds can come but to one conclusion, that there are no genuine issues of material fact and that defendant village of Highland Hills is entitled to judgment as a matter of law."

**Law and Analysis**

**Standard of Review**

{¶ 27} Civ.R. 56(C) provides that summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) after construing the evidence most favorably for the party against whom the motion is made, reasonable minds can only reach a conclusion that is adverse to the nonmoving party. *Zivich v. Mentor Soccer Club, Inc.*, 82 Ohio St.3d 367, 369-370 (1998); *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977). We review the trial court's judgment de novo, using the same standard that the trial court applies under Civ.R. 56(C). *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). Accordingly, we stand in the shoes of the trial court and conduct an independent review of the record.

**Age Discrimination; R.C. 4112.14; Burden of Proof**

{¶ 28} R.C. 4112.14(A) provides that "[n]o employer shall discriminate in any job opening against any applicant . . . aged forty or older who is physically able to perform the duties and otherwise meets the established requirements of the job and laws pertaining to the relationship between employer and employee."

{¶ 29} Although we are not bound to apply federal court interpretation of federal statutes to analogous Ohio statutes, Ohio state courts have looked to federal case law when considering claims of employment discrimination brought under the Ohio Revised Code. *Coryell v. Bank One Trust Co. N.A.*, 2004-Ohio-723, ¶ 15. *See also Campbell v. PMI Food Equip. Group, Inc.*, 509 F.3d 776, 785 (6th Cir. 2007);

*Frick v. Potash of Sask, Inc.*, 2010-Ohio-4292, ¶ 16 (3d Dist.) ("In interpreting the Ohio anti-discrimination statutes, Ohio courts have consistently looked to federal cases interpreting federal civil rights and age-discrimination legislation in addition to Ohio case law.").

{¶ 30} Peters and the village disagree about the requisite burden of proof for an age-discrimination claim. Peters contends that the traditional burden-shifting framework set forth by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and adopted by the Ohio Supreme Court in *Barker v. Scovill, Inc.*, 6 Ohio St.3d 146 (1983), has been "effectively done away with" by the Supreme Court's decision in *Bostock v. Clayton Cty.*, 590 U.S.__, 140 S. Ct. 1731 (2020). We disagree.

{¶ 31} *Bostock* addressed Title VII of the Civil Rights Act of 1964, which prohibits employment discrimination based on race, color, religion, sex, and national origin. The *Bostock* Court clarified that "[a]n employer who fires an individual for being homosexual or transgender fires that person for traits or actions it would not have questioned in members of a different sex." *Bostock* at 1737. *McDonnell Douglas*, on the other hand, dealt with the Age Discrimination in Employment Act ("ADEA"). The Sixth Circuit has found that *Bostock* has not changed the framework of an ADEA claim (the federal counterpart to a R.C. 4112.14 claim.) *Pelcha v. MW Bancorp, Inc.*, 988 F.3d 318, 324 (6th Cir. 2021). We agree that the standard set forth in *McDonnell Douglas* still applies.

{¶ 32} The *McDonnell Douglas* analysis involves a three-step procedure that allocates the shifting burdens of production of evidence to the parties. Under this analysis, the employee must first establish a prima facie case of age discrimination. Next, the burden of production shifts to the employer to state some legitimate non-discriminatory reasons for its action. Finally, the burden shifts back to the employee to show that the employer's stated reasons were a pretext for age discrimination. *Wang v. Goodyear Tire & Rubber Co.*, 68 Ohio App.3d 13, 16 (9th Dist. 1990), citing *McDonnell Douglas* and *Barker*.

**Prima Facie Case Established**

{¶ 33} A prima facie claim for age discrimination may be proven by direct or circumstantial evidence. *Vickers v. Wren Indus.*, 2005-Ohio-3656, ¶ 25 (2d Dist.). Peters has not presented any direct evidence of age discrimination. Absent direct evidence of age discrimination, a plaintiff seeking to establish a prima facie case must show that he or she (1) is a member of a protected class, (2) was subject to an adverse employment decision, (3) is qualified for the position, and (4) was replaced by a substantially younger person or a similarly situated nonprotected employee was treated more favorably. *Mauzy v. Kelly Servs.*, 75 Ohio St.3d 578, 582 (1996).

{¶ 34} The village contends that Peters failed to establish a prima facie case of age discrimination. It is undisputed that Peters was over 40 and Campbell was significantly younger than Peters. Peters was subject to an adverse employment decision — he did not get the chief of police position. The only element that was potentially debatable was whether Peters was qualified for the chief position. The

village contends that he was not because he was "a part-time officer that had nearly no experience policing in Highland Hills." Peters, on the other hand, contends that his nearly 30-year career in law enforcement qualified him for the position.

{¶ 35} Qualification is reviewed objectively. "The only relevant inquiry at the prima facie stage of the analysis is whether the employee was objectively qualified for the position, taking into consideration the employee's education, experience, and skills." (Emphasis omitted.) *Leib v. Famous Distrib.*, 2006 U.S. Dist. LEXIS 5802, 30 (S.D. Ohio Feb. 15, 2006), citing *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 575-576 (6th Cir. 2003). At the prima facie stage, "'[a] court must evaluate whether a plaintiff established his qualifications independent of the employer's proffered nondiscriminatory reasons for discharge.'" *Erwin v. Morrow*, 2019 U.S. Dist. LEXIS 58288 (S.D. Ohio Apr. 4, 2019), quoting *Cicero v. Borg-Warner Auto., Inc.*, 280 F.3d 579, 585 (6th Cir. 2002). "[A] court cannot conflate the prima facie analysis with the second stage of the *McDonnell Douglas* inquiry." *Leib* at *id.*, citing *Wexler* at *id.* Instead, "the focus at this point should be on Plaintiff's objective qualifications, such as his [or her] experience in the industry and demonstrated possession of the required general skills." *Chitwood v. Dunbar Armored, Inc.*, 267 F.Supp.2d 751, 756 (S.D. Ohio 2003), citing *Wexler* at *id.* "The prima facie burden of showing that a plaintiff is qualified can therefore be met by presenting credible evidence that his or her qualifications are at least equivalent to the minimum objective criteria required for employment in the relevant field." *Wexler* at *id.*; *see also Pattison v. W.W. Grainger, Inc.*, 2010-Ohio-

2484, ¶ 28 (8th Dist.), quoting *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 657 (6th Cir. 2000) ("'A court must examine the plaintiff's evidence independent of the nondiscriminatory reason "produced" by the defense as its reason for terminating plaintiff.'").

{¶ 36} Peters had almost 30 years of law enforcement experience, which included serving as a detective and lieutenant platoon commander. Additionally, Peters had supervisory positions for several high-profile events. Upon an objective review of the evidence Peters presented, he was qualified for the chief of police position. Peters therefore met all the requirements for a prima facie showing of age discrimination. Thus, we consider the second step in the burden-shifting framework — whether the village offered a legitimate nondiscriminatory reason for promoting Campbell.

### Legitimate, Nondiscriminatory Reason for the Village's Selection

{¶ 37} If a plaintiff establishes a prima facie case of discrimination, the second step of the *McDonnell Douglas* framework shifts the burden to the employer "to rebut the presumption of discrimination by presenting evidence of some legitimate, nondiscriminatory reason for its action." *Kenner v. Grant/Riverside Med. Care Found.*, 2017-Ohio-1349, ¶ 28 (10th Dist.). This is a burden of production, not persuasion, and is satisfied if the employer "'introduce[s] evidence which taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action.'" *Id.*, quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993). "If the employer articulates a legitimate,

nondiscriminatory reason, 'the presumption created by the prima facie case drops from the case because the employer's evidence has rebutted the presumption of discrimination.'" *Id.*, quoting *Williams v. Akron*, 2005-Ohio-6268, ¶ 12. "However, if the employer fails to meet its burden of production and 'reasonable minds could differ as to whether a preponderance of the evidence establishes the facts of a prima facie case,' then the question of whether the employer discriminated must be decided by the fact finder." *Williams* at ¶ 13, quoting *St. Mary's* at 509-510.

{¶ 38} The village maintains that Campbell, and not Peters, was promoted to the chief position because Campbell "was the best candidate for the job." Peters contends that "the 'best fit' justification for an employment decision is highly suspect and generally constitutes a 'non-reason' that is insufficient as a matter of law to satisfy the employer's obligation to proffer evidence is legitimate non-discriminatory reason for its action." We might be inclined to agree with Peters if the village merely stated that Campbell was the "best fit" without explanation. But the village explained why it found Campbell to be the "best fit."

{¶ 39} The village cites that, at the time of Chief Preston's resignation, Campbell was the highest-ranking officer in village's police department, he was appointed acting chief, and ultimately selected for the position "based on his leadership skills and knowledge of how the Highland Hills Police Department worked." In reaching its decision, the village noted that Campbell "would encounter the mayor and discuss policing philosophy and community engagement." In contrast, according to the village, Peters "did not know and/or interact with the

other police officers as he had not worked any shift in his two years with the department. He simply kept his police commission active, and even told the mayor he wanted to work as a part-time Chief for two years before retiring, again."

{¶ 40} On this record, the village offered a legitimate, nondiscriminatory reason for its selection of Campbell. The burden then shifted to Peters to show that the village's reasons were pretextual.

**No Pretext**

{¶ 41} To demonstrate pretext, a plaintiff must ultimately prove both that the employer's stated reason for the adverse employment decision "was not the real reason for its action, and that the employer's real reason" was discrimination. *E.E.O.C. v. Ford Motor Co.*, 782 F.3d 753, 767 (6th Cir. 2015). At summary judgment, however, a plaintiff need only produce evidence that would allow a jury to find that the employer's stated reason "is unworthy of credence." *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 147 (2000); *see also Miles v. S. Cent. Hum. Res. Agency, Inc.*, 946 F.3d 883, 888 (6th Cir. 2020). To that end, a plaintiff can typically create a genuine issue of fact by producing evidence that the employer's stated reason (1) had no basis in fact, (2) did not actually motivate the employer's actions, or (3) was insufficient to motivate the employer's actions. *Briggs v. Univ. of Cincinnati*, 11 F.4th 498, 515 (6th Cir. 2021).

{¶ 42} Peters contends that the village's offered justification — that Campbell was the "best fit" — "had no basis in fact because the Village did not present any facts admissible in evidence to support it." We disagree. Mayor Booker

testified at his deposition as to why he believed Campbell was the "best fit." At the time of the former chief's, Preston, resignation, morale in the department was low. Mayor Booker sought to boost the morale. At the time, Campbell was the highest-ranking officer in village's police department and was appointed acting chief. Mayor Booker testified that Campbell was ultimately selected for the position "based on his leadership skills and knowledge of how the Highland Hills Police Department worked." In reaching its decision, the village noted that Campbell "would encounter the mayor and discuss policing philosophy and community engagement." Further, the other officers on the force knew and respected Campbell.

{¶ 43} In finding no pretext, we have considered Peters's preselection claim. Even if the village did preselect Campbell, there simply is no evidence that it did so because of his age. "[W]hile preselection may establish that an employee was 'unfairly treated, it does not by itself prove . . . discrimination.'" *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 271 (4th Cir. 2005), quoting *Blue v. United States Dept. of Army*, 914 F.2d 525, 541 (4th Cir. 1990), citing *Casillas v. United States Navy*, 735 F.2d 338, 344 (9th Cir. 1984).

{¶ 44} In sum, the village articulated legitimate, nondiscriminatory reasons for not promoting Peters. In turn, Peters did not present sufficient evidence to establish that the village's stated reasons were pretext for age discrimination. Consequently, we overrule Peters's sole assignment of error and affirm the trial court's decision to enter summary judgment in favor of the village.

{¶ 45} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHAEL JOHN RYAN, JUDGE

KATHLEEN ANN KEOUGH, A.J., and
SEAN C. GALLAGHER, J., CONCUR