[Cite as *Dove v. Lakewood*, 2025-Ohio-453.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

TONY D. DOVE,                                    :

    Plaintiff- Appellant,               :

                                      No. 113905

    v.                                               :

CITY OF LAKEWOOD, ET AL.,                        :

    Defendants-Appellees.               :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** February 13, 2025

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-23-974694

---

### *Appearances:*

Schroth Law, LLC, and Michael T. Schroth; Paul J. Corrado Attorney & Counselor at Law, Co., and Paul J. Corrado, *for appellant.*

Jennifer L. Swallow, Chief Assistant Law Director, City of Lakewood; Littler Mendelson, P.C., Brian P. FitzGerald, and Chad J. Kaldor, *for appellee.*

MICHELLE J. SHEEHAN, P.J.:

{¶ 1} Plaintiff-appellant Tony D. Dove worked for defendant-appellee City of Lakewood in its Wastewater Treatment Plant (WTTP or "the plant") for three decades. He claims that he was denied a promotion to a management position because he is African American. He filed a complaint against Lakewood for race discrimination and three individuals who made the hiring decision for aiding and abetting Lakewood's discriminatory acts. The trial court granted summary judgment in favor of Lakewood and the individual defendants. Having thoroughly reviewed the record and the pertinent law, we find no merit to the appeal and affirm the trial court's judgment.

**Factual Background**

{¶ 2} Lakewood's Public Works Department has eight divisions, including the WWTP, which is responsible for treating wastewater streams and disposing the subsequent byproduct. The plant operates 24 hours a day and 365 days a year. The Division Manager is the operator of record for the plant, whose responsibilities include handling the EPA reporting, overseeing the maintenance of the plant and its equipment, and managing the employees. The plant employs approximately 20 employees, who work in various positions such as Plant Attendant, Shift Operator, Instrument Technician, and in maintenance jobs. The Project Manager, the position Dove applied for, reports to the Division Manager and handles the day-to-day operation of the plant as well as functions as the backup operator of record.

{¶ 3} In February 2021, the Division Manager Bill Crute retired and the Project Manager Mirko Kucinic was promoted to that position. In March 2021, Lakewood advertised the position for the Project Manager internally and externally. The job posting stated as follows:

> The City of Lakewood is seeking a Project Manager for the WWTP. The position manages the operations and staff associated with the WWTP in conjunction with the Division Manager. This includes organizing, overseeing, directing and managing all operations of the plant. The ideal candidate will be a creative, innovative change agent who must be able to communicate with all levels in organization and possess excellent analytical and problem-solving skills. This position requires skills in planning work; directing, motivating and evaluating the performance of employees; the ability to successfully implement the City's WWTP initiatives. Qualified candidates must possess a minimum of Associate's degree or equivalent from a two-year college or technical school; five to seven years of progressively responsible related experience ideally in a supervisory or management position related to a wastewater treatment plant; minimum of five years' experience in WWTP Operations and Maintenance; and, the ability to use and implement data management software; or, any identifiable combination of education, training and experience which provides the required knowledge, skills, and abilities to perform the essential functions of the job.

{¶ 4} In addition, a candidate is required to possess an Ohio EPA Class III Wastewater Works Operator License and "must have the materials submitted to the EPA needed to obtain the Ohio EPA Class IV Wastewater Works Operator License" within 18 months of appointment, and must obtain the license within 36 months of appointment.

{¶ 5} Dove applied for the position. The plant's Instrument Technician Robert Collins, who is Caucasian, also applied for the position. There were also external applicants, but Dove and Collins were the only applicants interviewed for

the position.  They were interviewed by Kucinic, Lakewood's Public Works Director Roman Ducu, and Human Resources Director Claudia Dillinger.  After the interviews, they unanimously selected Collins for the position.

**Complaint and Summary Judgment**

{¶ 6}  In February 2023, Dove filed a complaint alleging race discrimination against Lakewood and the three individuals who made the hiring decision.  Under Count 1 of the complaint, Dove alleged race discrimination by Lakewood in violation of R.C. Ch. 4112.  Under Count 2, he alleged that Kucinic, Ducu, and Dillinger aided and abetted Lakewood's discriminatory acts in violation of R.C. 4112.02(J).

{¶ 7}  Lakewood and the individual defendants filed a motion for summary judgment. Attached to the motion was the deposition testimony of Dove, Collins, Kucinic, Dillinger, and Ducu, and Kucinic's affidavit.  Dove filed a brief in opposition to Lakewood's summary judgment, attaching the same deposition testimony and his own affidavit.

{¶ 8} The trial court granted summary judgment in favor of the defendants. Dove now appeals from the judgment.  On appeal, Dove raises one assignment of error for our review:

> The trial court erred when it granted the Appellees' motion for summary judgment.  There are genuine issues of material fact and Appellees are not entitled to judgment as a matter of law.

**Summary Judgment Standard**

{¶ 9} Summary judgment is appropriate where (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of

law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his or her favor. *Harless v. Willis Day Warehousing Co., Inc.*, 54 Ohio St. 2d 64, 66 (1978); Civ.R. 56(C).

{¶ 10} Civ.R. 56(C) states that summary judgment shall be rendered if "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." We review a trial court's grant of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 1996-Ohio-336.

**Evidence**

{¶ 11} Lakewood and Dove submitted essentially the same evidence for the trial court's consideration of their respective claims. Their claims center on who had better qualifications for the Project Manager position.

{¶ 12} Lakewood's standard hiring practice requires the evaluation of internal candidates by the department head. Before the interview, Dove and Collins were evaluated by Kucinic, who, as the Project Manager of the plant, had worked with both Dove and Collins for many years. Collins was rated as "excellent" in all 6 categories: job knowledge, quality of work, quantity of work, work habits, attitude, and attendance. Dove was rated as "excellent" in job knowledge and "good" in the remaining categories. The three interviewers also considered Collins to have

performed much better in the interview. Dove disputes Kucinic's evaluation and the interviewers' assessment of his interview performance.

{¶ 13} For ease of discussion, we will describe the evidence regarding the candidates' qualifications in six categories: their (1) work history and education, (2) attendance records, (3) interview performance, (4) supervisory or management experience, (5) wastewater operator certification,[1] and (6) knowledge about the High-Rate Treatment ("HRT") facility, a new facility to be managed by the Project Manager.

## A. Work History and Education

### 1. Dove

{¶ 14} Dove, who has a high school diploma, worked in the plant since 1991. He worked initially as a Plant Attendant, performing custodial work, painting, grass trimming, and sample collecting. He worked in that position for ten years and, in 2013, became a Shift Operator, a position he still holds today. His resume described his duties in this position as "collected daily composite samples and implemented data management software into company systems"; "completed daily reports while managing shift, plant attendants and assisting staff in performing routine daily

---

[1] To be qualified to operate a wastewater treatment plant, an employee must have a wastewater operator certificate issued by the Ohio EPA relative to the level of the wastewater treatment plant. For instance, to operate a Class I facility requires a Class I certificate. Lakewood's wastewater treatment plant is a Class IV facility, and its Division Manager has a Class IV certificate. The Project Manager is required to possess a Class III certificate and to obtain the Class IV certificate within 36 months of being hired for the position.

tasks"; "assist the Maintenance Department with troubleshooting, diagnose, repairs and assist with Preventive Maintenance"; "monitor supplies and deliveries"; and "assist in monitoring work being performed by outside contractors." In his deposition, he stated his duties included assigning the jobs for the crew on the shift and supervising the crew "on a day-to-day basis through emergencies" and on safety and "learning issues."

{¶ 15} Dove's resume reflects also that he has two years of education in construction technology as well as a commercial and home inspection certificate from Cuyahoga Community College.

**2. Collins**

{¶ 16} While Dove worked in the WWTP since 1991, Collins's background was broader. Collins worked as a carpenter in 2000. He began working in the WWTP in 2001 as a Plant Attendant. In 2004, he left the WWTP to pursue a bachelor's degree but continued to work for Lakewood in its Refuse Department as a garbage collector. After he earned a degree in accounting from Cleveland State University in 2008, he continued to work in the Refuse Department and also operated an electronics repair business between 2016 and 2020. In 2019, he returned to the WWTP as an Instrument Technician, the job he held when he applied for the Project Manager position. His resume also reflects a "Lean Six Sigma" certificate, a manufacturing certificate.

{¶ 17} In his resume, Collins described his duties as Instrument Technician as "responsible for the installation, maintenance, and repair of instrumentation in

the wastewater treatment plant"; "assist management with making adjustments to supervisory control and data acquisition (SCADA) system, and programmable logic controllers (PLC's)"; "use 'Excel type' spreadsheet software to collect and analyze data, compose reports, and communicate relevant information to management, staff, service representatives, contractors etc."; and "assist maintenance and operations personnel and lab technician with daily tasks as well as special projects." His deposition testimony indicates that in this position he also trained employees in equipment operations and periodically handled the operations of the plant.

## B. Attendance

{¶ 18} Because the plant operates 24 hours a day and 365 days a year, the Project Manager is required to always be on call and reliability is an important qualification for this position. While Collins has no attendance issues, Lakewood produced Dove's attendance records, including multiple disciplinary notices, to show that Dove had a pattern of attendance issues.

{¶ 19} On October 27, 1997, Dove received a notice for his use of vacation time without prior approval, and several days later, he received a notice admonishing him for submitting an unacceptable doctor's certificate for sick time used. In a letter dated June 3, 1998, Dove was notified that he had improperly used sick time immediately preceding a holiday. In a letter dated June 25, 2002, he was notified for his abuse of sick time usage. In a letter dated August 16, 2004, he was notified by the management that he has "exhibited an abuse pattern of using unexcused sick time." On March 7, 2006, he was issued a written reprimand for

unauthorized absences. On September 6, 2007, he was notified of questionable usage of sick time immediately after a holiday. On March 31, 2008, he was again notified of questionable sick time usage after a holiday. His attendance sheets show that in the months before his application, he used 11 sick days between September and November 2020. According to Dove, he only called in sick twice in the 120 days prior to his interview. In his affidavit, Dove stated that he used 13 days in October and November 2020 because both he and his son were sick and his wife had COVID-19. He complains on appeal that, during the interview, he was never asked about his attendance and was therefore deprived of an opportunity to defend his attendance record.

## C. Interview Performance

{¶ 20} During the interview, each candidate was asked the same questions, 19 in total. The questions included topics such as their qualifications, projects they have worked on, and the skills they would bring to the position. The candidates were also asked about the wastewater operator certificates required for the position and the HRT Facility, a new facility under construction to be managed by the Project Manager. The interview notes taken by the three interviewers, which summarized the candidates' answers but without details, are part of the record.

### 1. Dove

{¶ 21} As reflected in the interview notes, when asked why he was the right candidate, Dove cited his 29 years of experience working in the plant and his possession of the Class III certificate for seven years. Regarding any projects he had

led, he mentioned that he helped with the plant's old "UV" system. Regarding his problem-solving skills, he cited his ability to communicate with the crew during his shifts to resolve issues as well as his experience in his own construction business. Regarding additional skills that would be useful to the position of Project Manager, Dove mentioned a business budgeting course; his Class I, II, and III certificates; a home inspection license; and his experience in construction.

### 2. Collins

{¶ 22} As reflected in the interview notes, when asked about his leadership experience in the plant, Collins cited his work as a co-leader in the plant's new PLC system and his work on employee training for the plant's new "UV" system. When asked about his problem-solving skills, he stated troubleshooting was a main part of his position as the Instrument Technician and also that the implementation of the new PLC required troubleshooting skills. When asked about additional skills he would bring to the position, he cited his ability in data gathering and analysis and his fiscal and budgeting skills.

{¶ 23} As to his achievements, Collins stated he was proud of his ability to have acquired three wastewater operator licenses in the short span of two years and he also mentioned his work on a project involving building a database for the plant. When asked about his ability to upgrade the plant's Standard Operating Procedure, he cited his familiarity with the manual and his experience working on a training guide for the Instrument Technician position. When asked about the EPA reporting

obligation, he stated that it was critical to report to the EPA accurately regardless of whether the plant met the requirements.[2]

**D. Supervisory or Management Experience**

{¶ 24} The job posting seeks a candidate with "five to seven years of progressively responsible related experience ideally in a supervisory or management position related to a wastewater treatment plant." A main contention by Dove in this race discrimination case is that he had supervisory experience in his position of Shift Operator while Collins had none.

{¶ 25} The evidence in the record contains no documentary evidence or testimony that Collins had supervisory experience relating to a wastewater treatment plant. While Lakewood alleges Collins had supervisory experience from his own electronics repairs business, neither his resume nor the interview notes referenced his supervisory role in the business.

{¶ 26} As to Dove, his resume stated only that he "managed shift." However, he produced a three-page exhibit to show that his role as a Shift Operator also involved supervisory responsibilities. The first page of the exhibit is a 2013 job posting for a Shift Operator, which stated that the Shift Operator "must have the ability to assist in the training of inexperienced personnel" and "must have the ability to direct the shift's plant attendants and assist them in the performance of

---

[2] Although Kucinic alleged in his affidavit that Collins mentioned in the interview his goal for improving the plant operation by using his Lean Six Sigma manufacturing certification, the interview notes did not reflect the discussion.

routine and/or assigned work tasks." It stated additionally that "[w]ork involves responsibility for the routine and emergency operation of all plant processes" and "[w]ork is normally performed under the general guidance of the facility's managers[.]"

{¶ 27} The second and third page of the exhibit is a document titled "Wastewater Treatment Plant Lead Operator." The document stated that the Lead Operator "serves as the operator in charge during any given shift and is second in command to the Wastewater Treatment Plant Operations Manager." A Lead Operator is to, among other duties, "[a]ssist[] Wastewater Treatment Plant Operations Manager in planning, organizing, assigning, directing, and reviewing the work of employees engaged in the operation and maintenance of the wastewater treatment plant . . . "; "[a]ssist[] in overseeing the operation and maintenance of facilities to meet all applicable regulatory requirements . . . "; and "[a]ssist[] in developing and implementing techniques and methods of process control which increases plant efficiency." While Dove alleges he performed the duties as enumerated in this document, his resume and deposition testimony, as detailed above, does not reflect all the described duties.[3]

{¶ 28} Regarding Dove's claim that he had supervisory responsibilities in his job as a Shift Operator, Kucinic acknowledged that Dove trained less-experienced

---

[3] Regarding this exhibit, Dove testified the 2013 job posting was accurate but did not testify regarding the document titled "Wastewater Treatment Plant Lead Operator."

employees but did not agree with Dove's claim he had supervisory responsibilities over others. At his deposition, Dove acknowledged he did not have the authority to hire, fire, discipline, or review the performance of other employees. As evidence of the "supervisory and operational" responsibilities assumed by a Shift Operator, Dove points to the testimony of Collins, who was asked about the duties involved in this position. The portion of the transcript cited by Dove, however, reflects that, when asked if the Shift Operator would be "in charge of" the plant on some shifts, Collins clarified that the Shift Operator was only "in charge of their crew."

{¶ 29} Although Dove's resume or deposition testimony made no mention of owning a construction and remodeling business as part of his supervisory experience, he alleged in his affidavit that he owned and operated the business since the 1990s and supervised as many as four subcontractors and up to six employees at a time. The interview notes, however, reflect that Dove only referenced his business when answering a question about his problem-solving skills.

### E. Certificates

{¶ 30} The position of Project Manager requires a Class III certificate. Both Dove and Collins have Class I, II, and III certificates. Dove has possessed the Class III certificate since 2013, when he became a Shift Operator. When asked about his proudest achievement in his work, he cited the three certificates. Collins acquired the Class I, II, III certificates during the two years preceding his application to the Project Manager position. He acquired the Class III certificate just 11 days before his application. While Dove emphasized his possession of Class III certificate

since 2013, Collins emphasized his ability to obtain the three certificates in a short span of two years.

{¶ 31} Regarding the certificates, Dove alleges that Lakewood revised the Project Manager job posting and lowered the certification requirement to enable Collins to meet the requirement. He alleges that the prior job posting for the position in 2014 required a candidate to have held the Class III certificate for three years, but Lakewood eliminated this requirement in the 2021 job posting.

{¶ 32} Dillinger was asked about the 2021 posting at her deposition. She testified that she pulled the prior job posting and had it reviewed and revised by Crute and Kucinic, who had both held the position. She testified that Crute recommended eliminating the requirement to draw a larger pool of candidates.

## F. Knowledge Regarding the HRT Facility

{¶ 33} The HRT facility was being constructed in 2021 to treat excess waterflow. The management and operation of the HRT facility would be part of the Project Manager's responsibilities. While neither candidate had experience with the HRT, one of the reasons cited by Lakewood for selecting Collins was his knowledge about the new facility. According to the interview notes, when asked about HRT, Dove appeared unfamiliar with the plans for the facility and mentioned only that he had researched an HRT plant in California. He gave erroneous information about the HRT's capacity. Collins, however, was able to demonstrate certain technical knowledge about the HRT. Dove alleges that he was "denied" training and Collins was given "preferential treatment" regarding HRT training but does not point to any

portion of the record to support this allegation. Collins testified that he did not receive any training on the HRT prior to the interview, but testified that during the construction of the facility, Kucinic took a group of employees who were around at the time to walk through the facility and he was part of the group.

**Law: *McDonnell-Douglas*'s Burden-Shifting Framework**

{¶ 34} R.C. Ch. 4112 governs antidiscriminatory actions in Ohio. R.C. 4112.02(A) provides that it is an unlawful discriminatory practice "[f]or any employer, because of the race, color, religion, sex, military status, national origin, disability, age, or ancestry of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment." When examining employment discrimination cases pursued under State law, the courts in Ohio look to federal antidiscriminatory case law. *Nelson v. Univ. of Cincinnati,* 2017-Ohio-514, ¶ 31 (10th Dist.), citing *Coryell v. Bank One Trust Co. N.A.*, 2004-Ohio-723, ¶ 15. *See also Plumbers & Steamfitters Joint Apprenticeship Commt. v. Ohio Civ. Rights Comm.*, 66 Ohio St.2d 192, 196 (1981) (federal case law interpreting Title VII of the Civil Rights Act is generally applicable to cases involving alleged violations of R.C. Ch. 4112).

{¶ 35} Dove has not alleged any direct evidence of discrimination. In the absence of direct evidence, a plaintiff's claim of employment discrimination is analyzed under the burden-shifting framework established in *McDonnell Douglas*

*Corp. v. Green*, 411 U.S. 792 (1973). *See, e.g., Boutros v. Canton Regional Transit Auth.*, 997 F.2d 198, 202-203 (6th Cir. 1993).

{¶ 36} Dove raises a claim of failure-to-promote race discrimination. For his prima facie case, he must establish that (1) he is a member of a protected class; (2) he applied for and was qualified for a promotion; (3) he was considered for and denied the promotion; and (4) another employee of similar qualifications who is not a member of the protected class received the promotion. *Solis v. Ohio State Univ. Wexner Med. Ctr.*, 2024 U.S. Dist. LEXIS 40167, *10-11 (S.D. Ohio Mar. 7, 2024), citing *Grizzell v. Columbus Div. of Police*, 461 F.3d 711, 719 (6th Cir. 2006). *See also Chapa v. Genpak, LLC*, 2014-Ohio-897 ¶ 95 (10th Dist.), and *Smith v. ExpressJet Airlines, Inc.*, 2015-Ohio-313, ¶ 13 (8th Dist.).

{¶ 37} If Dove is able to establish a prima facie case of discrimination under *McDonnell Douglas*, there is a presumption that Lakewood unlawfully discriminated against him and the burden shifts to Lakewood to produce evidence to show a legitimate, nondiscriminatory reason for its action. *Chenevey v. Greater Cleveland Regional Transit Auth.*, 2013-Ohio-1902, ¶ 25 (8th Dist.), citing *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981). The burden thereafter shifts to Dove to show that Lakewood's stated reason is merely a pretext for unlawful discrimination, but the ultimate burden of persuasion remains at all times with Dove, the plaintiff. *Id.,* citing *Texas Dept. of Community Affairs* at 254.

**Analysis**

{¶ 38} It is undisputed the first three prongs of Dove's prima facie case under *McDonnell Douglas,* 411 U.S. 792, are established. Lakewood argues that the trial court properly granted summary judgment because Dove cannot establish the fourth factor of his prima facie case. Lakewood contends that Dove did not have similar qualifications to Collins based on their resume, interview performance, and attendance record. Lakewood also argues that, even if Dove were able to establish a prima facie case, it had a legitimate nondiscriminatory reason for promoting Collins, because Collins was more qualified for the position of Project Manager and Dove failed to establish that Lakewood's reason was a pretext.

**a. Dove's Prima Facie Case**

{¶ 39} To establish the fourth element of the prima facie case, a plaintiff must demonstrate that he "had similar qualifications" to the successful candidate. *Solis*, 2024 U.S. Dist. LEXIS 40167, at *10. The case law precedent indicates that "the fact two candidates were offered interviews for a position suggested at least a genuine issue of fact that the candidates had relatively similar qualifications, establishing the fourth prong." *Id.* at *12, citing *Meyrose v. Vitas Hospice Servs., LLC*, 2021 U.S. Dist. LEXIS 212455 (E.D. Ky. Nov. 3, 2021), *aff'd*, 2022 U.S. App. LEXIS 21423 (6th Cir. Aug. 2, 2022). "Establishing the prima facie burden is 'not intended to be onerous.'" *Id.*, quoting *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 814 (6th Cir. 2011). As this court explained, "[D]emonstrating a prima facie case does not present an onerous burden, as a prima facie case merely permits a

rebuttable presumption of discriminatory treatment. Appellant need only demonstrate that he was capable and could meet legitimate employer expectations." *Hardy v. The Andersons, Inc.*, 2022-Ohio-3357 (8th Dist.), citing *Stookey v. S. Shore Transp. Co.*, 2012-Ohio-3184, ¶ 14 (6th Dist.), citing *Tex. Dept of Community Affairs,* 450 U.S. 248 at 253.

{¶ 40} Accordingly, when the court evaluates a plaintiff's prima facie case, it engages only in "a general weighing" of the two candidates' qualifications. *Solis*, 2024 U.S. Dist. LEXIS 40167, at *12, citing *Provenzano*, 663 F.3d 806 at 813-814. "A 'more searching evaluation of the relative qualifications of the two candidates' is more appropriately performed at the pretext stage of analysis." *Id.*, quoting *Provenzano* at 816. Thus, an argument that plaintiff cannot establish this burden because the selected candidate was superior cannot be considered at the prima facie stage. *Solis* at *13-14, citing *Wheeler v. Miami Valley Career Technology Ctr.*, 2022 U.S. Dist. LEXIS 44206, *7 (S.D. Ohio Mar. 14, 2022).

{¶ 41} While Dove's and Collins' qualifications are not identical, applying the liberal standard for the fourth prong, we find Dove has presented evidence of his experience and qualifications to meet his prima facie burden regarding the fourth prong.

### b. Lakewood's Legitimate, Nondiscriminatory Reason

{¶ 42} Consequently, the burden shifts to Lakewood to produce evidence to show a legitimate, nondiscriminatory reason for promoting Collins rather than Dove. At this stage, the burden is one of production, not persuasion, and is satisfied

if Lakewood presents evidence "'which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action.'" *Kenner v. Grant/Riverside Med. Care Found.*, 2017-Ohio-1349, ¶ 28 (10th Dist.), quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993).

{¶ 43} Lakewood offered evidence to show that it had a legitimate, nondiscriminatory reason for promoting Collins. Lakewood contends Collins's qualifications were superior to Dove's for the Project Manager position. Specifically, Lakewood points to Collins's background and experience as reflected in his resume, his interview performance, and his perfect attendance record. Collins has a bachelor's degree; had no record of attendance issues; had electronics and technical experience and skills Lakewood deemed desirable for the position; was rated "excellent" in all six evaluation categories by Kucinic; and performed much better at the interview than Dove, including demonstrating certain technical knowledge about the new HRT facility.

{¶ 44} "Selecting the better candidate based on experience and interview performance is a legitimate, nondiscriminatory reason for a hiring or promotion decision." *Drummond v. Ohio Dept. of Rehab. & Corr.*, 2022-Ohio-1096, ¶ 19 (10th Dist.), citing *Toledo v. Jackson*, 207 Fed.Appx. 536, 537 (6th Cir. 2006) (employer articulated a legitimate, nondiscriminatory reason for hiring a candidate who interviewed better and had better academic credentials). On the record before us, we find that Lakewood has produced evidence for a legitimate, nondiscriminatory reason for its selection of Collins for the Project Manager position. Lakewood met

its burden of production under the second step of the *McDonnell Douglas* framework.

### c. Pretext

{¶ 45} The burden now shifts to Dove to demonstrate, by a preponderance of the evidence, that the reason Lakewood offered is a pretext for discrimination. *McDonnell Douglas,* 411 U.S. at 807. "To demonstrate pretext, a plaintiff must ultimately prove both that the employer's stated reason for the adverse employment decision 'was not the real reason for its action, and that the employer's real reason' was discrimination." *Peters v. Highland Hills*, 2024-Ohio-2366, ¶ 41 (8th Dist.), quoting *E.E.O.C. v. Ford Motor Co.*, 782 F.3d 753, 767 (6th Cir. 2015). "'Mere conjecture that [the] employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment.'" *Olive v. Columbia/HCA Healthcare Corp.*, 2000 Ohio App. LEXIS 914 (8th Dist. Mar. 9, 2000), quoting *Branson v. Price River Coal Co.*, 853 F.2d 768, 772 (10th Cir. 1988).

{¶ 46} Dove argues the reason offered by Lakewood, namely, that Collins had superior qualifications for the position, is nothing more than a pretext to discriminate against him because the evidence shows he was a better candidate than Collins. For his superior qualifications, Dove cites his 30-year experience in the WWTP, including eight years of experience as Shift Operator, the duties of which included managing the crew in the shift as well as the operation of the plant during certain shifts. He also emphasizes that he has possessed the Class III certificate for

seven years while Collins acquired the certificate merely 11 days before applying for the position.

{¶ 47} Nearly all evidence presented by Dove to establish pretext relates to his qualifications relative to Collins's. "[W]hen qualifications evidence is all (or nearly all) that a plaintiff proffers to show pretext, the evidence must be of sufficient significance itself to call into question the honesty of the employer's explanation." *Bender v. Hecht's Dept. Stores*, 455 F.3d 612, 627 (6th Cir. 2006). "A laxer standard would move [the] court from its proper role of preventing unlawful employment practices to the illegitimate role of acting as a 'super personnel department,' overseeing and second guessing employers' business decisions." *Id.*, quoting *Verniero v. Air Force Academy School Dist.*, 705 F.2d 388, 390 (10th Cir. 1983).

{¶ 48} For relative qualifications to establish triable issues of fact as to pretext, Dove must show "either (1) the plaintiff was a plainly superior candidate, such that no reasonable employer would have chosen the latter applicant over the former, or (2) plaintiff was as qualified . . . if not better qualified than the successful applicant, and the record contains 'other probative evidence of discrimination.'" *Bartlett v. Gates*, 421 Fed.Appx. 485, 490-491 (6th Cir.2010), quoting *Bender* at 627-628. *See also Drummond*, 2022-Ohio-1096, at ¶ 23-24. While Dove cited a different standard for pretext in his brief in opposition to Lakewood's motion for summary judgment, he agrees on appeal that the "plainly superior" standard set forth in *Bartlett* is applicable in this case.

{¶ 49} Accordingly, for Dove to establish pretext, he must show either that (1) he was a "plainly superior" candidate such that no reasonable employer would have chosen Collins over him, or (2) he was as qualified, if not better qualified than Collins, and the record contains "other probative evidence of discrimination." Our review of the evidence shows the following qualifications possessed by these two candidates.

{¶ 50} Dove's claim of superior qualifications is primarily based on his eight years of experience as Shift Operator, which provided him with experience of crew management and plant operation. Collins also had operational experience as the plants' Instrument Technician on occasions, however. In this position, he had additional experience of installing and calibrating the plant's instruments and designing electronic equipment. Moreover, he helped with the development and implementation of the PLC, the plant's operational system. Finally, he had electronics and technical experience from his electronics repairs business. Dillinger testified that Lakewood preferred a candidate with technical background for the position.

{¶ 51} The evidence indicates Dove had more plant operational experience as a Shift Operator than Collins. The evidence, however, does not reflect that either had supervisory duties within or outside the WWTP. Dove managed the crew during his shift but did not have supervisory authority over them such as hiring, firing, or performing evaluations. While both candidates had owned a business, neither the

interview notes nor the candidates' resumes contain information regarding their supervisory role over the employees.

{¶ 52} Regarding the certifications, both candidates had the Class III license. Dove possessed it for a much longer period of time, but Collins obtained Class I, II, and III certificates within a very short period of time, which may reflect his potential ability for timely obtaining the Class IV license required for the Project Manager position.

{¶ 53} Regarding the HRT facility, Collins demonstrated technical knowledge of the new HRT facility in the interview while Dove gave certain erroneous information. Dove alleges Collins was treated preferentially regarding training on the HRT plant but does not direct us to any portion of the record for the allegation.

{¶ 54} Finally, because of the nature of the plant's operation, the position of Project Manager requires a candidate with an excellent attendance record. The documentary evidence produced by Lakewood shows Dove had received multiple disciplinary notices regarding his attendance and used many sick days in the months preceding his application. Dove alleges that the matter of his attendance was never brought up during the application process and he was not given an opportunity to answer any questions about his attendance record during the interview. He argues Lakewood's claim of his attendance problem is another instance of pretext. We note, however, that Dove does not challenge Kucinic's rating of him as "good" for

attendance or his rating of Collins as "excellent" nor does he provide other evidence that his attendance record was inaccurate.

{¶ 55} The totality of the evidence shows Dove and Collins would bring different experiences and skills to the posted job. While Dove claims his eight-year experience as Shift Operator made him more qualified for the position, Lakewood is free to base its hiring decision on other qualifications possessed by the other candidate. "Employers are 'free to choose among qualified candidates' when making decisions to hire managerial employees." *Wheeler,* 2022 U.S. Dist. LEXIS 44206, at *24, quoting *Bender*, 455 F.3d at 626. The court does not "'require employers to make perfect decisions, nor forbid them from making decisions that others may disagree with.'" *Id*., quoting *Bender* at 626.

{¶ 56} Lakewood's decision to promote Collins rather than Dove was also based on the pre-interview evaluation by Kucinic, who had worked with both Dove and Collins. Dove claims it is pretext for Lakewood to claim it promoted Collins based in part on Kucinic's evaluation. He argues that the evaluation was subjective and "it provides a golden opportunity for an individual who possesses discriminatory animus to covertly steer the decision-making process in a prejudicial way." However, case law precedent indicates that disagreement with the employer's evaluation is not a valid basis for establishing pretext, because disagreement with the evaluation does not equate it with being false. *Phipps v. Wieland Chase, LLC*, 2024 U.S. Dist. LEXIS 103222, 39 (N.D. Ohio June 11, 2024), citing *Brown v. Kelsey-Hayes Co*., 814 Fed.Appx. 72, 81 (6th Cir. 2020), and *Meyrose*, 2021 U.S.

Dist. LEXIS 212455, at *7. *See also Lefevers v. GAF Fiberglass Corp.*, 667 F.3d 721, 725-726 (6th Cir. 2012) (although plaintiff employee disputed aspects of the contents and context of the performance appraisals, his disagreement with the employer's assessment of his performance did not render the employer's reasons pretextual).

{¶ 57} Having reviewed the record, we cannot conclude that Dove has created triable issues of fact as to pretext because he has not presented evidence to show that he was the "plainly superior" candidate such that no reasonable employer would have chosen Collins over him. *Bartlett*, 421 Fed.Appx. 485, 490-491.

{¶ 58} Dove also claims he can establish the second prong of the *Bartlett* standard, which requires the record to contain "other probative evidence of discrimination." For "other probative evidence of discrimination," Dove alleges that there was a dearth of African American employees working in the WWTP; in March 2021, of 22 employees in the plant, he was the only African American employee. Dove cites *Internatl. Bhd. of Teamsters v. United States*, 431 U.S. 324, 328 (1977), for the proposition that "statistics showing racial or ethnic imbalance are probative . . . because such imbalance is often a telltale sign of purposeful discrimination." In that case, the United States Supreme Court explained that, since the passage of the Civil Rights Act of 1964, the courts have frequently relied upon statistical evidence to prove a violation, because often the only available avenue of proof is the use of racial statistics. *Id*. at 339. *Internatl. Bhd. of Teamsters* is not pertinent in this case, because the record here does not

contain statistical evidence comparing the racial composition of Lakewood's work force to the composition of the population at large.

{¶ 59} For "other probative evidence of discrimination" Dove also directs us to the deposition testimony of Kucinic, Dillinger, and Ducu. He alleges their testimony shows that they were "woefully ignorant" of the racial makeup of Lakewood's employees, citing their inability to provide information about the number of African American employees who had worked in the WWTP or in the city's Public Works Department. Dove, however, cites no authority to support his claim that an inability to provide such information constitutes probative evidence of discrimination to establish pretext.

{¶ 60} Based on our review of the record, applying the *Bartlett* analysis and taking all of the evidence in the light most favorable to Dove, we are unable to conclude that the evidence presented by Dove has created a genuine issue of material fact that supports an inference of pretext. Accordingly, Lakewood is entitled to summary judgment as a matter of law.

{¶ 61} "Where a court finds that a defendant is entitled to summary judgment on the underlying claims of discrimination and retaliation, the court must also necessarily grant summary judgment on the claim of aiding and abetting those claims." *Weinrauch v. Sherwin-Williams Co.*, 2019 U.S. Dist. LEXIS 114728, *40 (N.D. Ohio July 10, 2019), citing *Pringle v. Richmond Hts. School Dist.*, 2015 U.S. Dist. LEXIS 146218, *62 (N.D. Ohio 2015). Accordingly, Dove's aiding and abetting claim against the three individual defendants also fails as a matter of law.

{¶ 62} For the foregoing reasons, Dove's sole assignment of error lacks merit and we affirm the judgment of the trial court.

{¶ 63} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHELLE J. SHEEHAN, PRESIDING JUDGE

EILEEN T. GALLAGHER, J., and
DEENA R. CALABRESE, J., CONCUR